# Chamberlain *v.* Bromberg.

*Bill in Equity by Assignee of Insolvent Corporation, against Stockholders, to enforce Unpaid Subscriptions.*

1. *Assignment by insolvent corporation.*—Unless restrained by statute, an insolvent corporation, acting through its board of directors, as governing body, may make an assignment for the benefit of its creditors, authorizing the assignee to collect the unpaid subscriptions of stock, and to appropriate the assets received and collected to the payment of the debts.

2. *Liability of stockholders to creditors, and how enforced.*—By statutory provision, a stockholder in a private corporation is declared "individually liable to the creditors of such corporation, for the unpaid stock owned by him," and his liability is restricted to that indebtedness (Code, § 2023); but this provision, which was intended to harmonize the statutes with new constitutional provisions, applies alike to solvent and insolvent corporations, gives no right of action to creditors in their own name, and does not take away the power of the corporation, acting through its board of directors, to enforce this liability of the stockholders.

3. *Dissolved corporations; powers and duties of directors as trustees.* On the dissolution of a private corporation, by the expiration of its chartered existence, or annulment by forfeiture, the directors, or other governing body, "are the trustees of the stockholders and creditors, and are authorized to settle the affairs of the corporation, dispose of such property as is necessary to pay its debts, and divide among the stockholders the money and property remaining" (Code, §§ 2027–28); but these provisions do not take away the power of a private corporation,

[Chamberlain v. Bromberg.]

which has become insolvent, but whose charter has neither expired nor been annulled or forfeited, to make a voluntary assignment for the benefit of its creditors.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. THOS. W. COLEMAN.

The bill in this case was filed on the 28th April, 1887, by F. G. Bromberg, as the trustee or assignee under a deed of assignment executed by the Alabama Insurance Company, a domestic corporation, against Henry Chamberlain and others, as stockholders in said corporation; and sought, principally, to enforce the collection of the several defendants' unpaid notes given for their subscriptions of stock. The deed of assignment, a copy of which was made an exhibit to the bill, was signed by the president and secretary of the corporation, and purported to be executed "pursuant to a resolution of the board of directors;" recited that the corporation was "indebted to various persons in large sums, and a general assignment of all its property for the equal benefit of all its creditors is deemed necessary;" and conveyed to the trustee, for that purpose, all of its property, *choses* in action, &c., including "promissory notes given by stockholders for their unpaid subscriptions to the capital stock."

The said corporation was organized on the 22d April, 1884, under the general statutes of Alabama. Ten per cent. of the capital stock subscribed was paid in, as the bill alleged, and the corporation did a successful business, until about August 5th, 1885, when it was discovered that, through the defalcation of E. B. Goelet, its president, the company had become insolvent. Before the insolvency of the company, and while its business was prosperous, dividends to the amount of thirty per cent. had been declared, and credited on the notes given for stock, reducing the liability of the subscribers to sixty per cent., if these dividends were allowed to stand as credits. Before the insolvency of the company was known, and afterwards, several of the subscribers for stock transferred their shares, or made attempted transfers thereof, names and dates being specified; but the bill alleged that these several transfers were not made with the assent or approval of the board of directors, as required by the by-laws of the corporation, and were therefore ineffectual and inoperative. On the 5th November, 1886, "the president and secretary of said corporation indorsed its name upon all the notes given by the stockholders for their unpaid subscriptions for stock, and delivered them to the Queen Insurance Com-

37

[Chamberlain v. Bromberg.]

pany, a corporation, as collateral security for an indebtedness due by the Alabama Insurance Company to said Queen Insurance Company, which was stated, in a written instrument purporting to set out the terms of the pledge, to be $12,000, when in fact and in truth it did not exceed $10,000." The bill alleged, on information and belief, "that said transfer was of substantially all the property of said Alabama Insurance Company; that the officers of said company had no authority to make said transfer, and that the same is therefore null and void." The Queen Insurance Company was made a defendant to the bill, which also prayed that said transfer be declared null and void, and said defendant be required to surrender the notes.

Separate demurrers to the bill were filed by the several defendants, all of which were overruled by the chancellor. The demurrer of the Queen Insurance Company is not set out in the record, and is not passed on by this court. The grounds of demurrer specifically assigned by Henry Chamberlain, P. J. Lyons, and other stockholders, were, in substance—1st, that the insolvent corporation had no authority to make the assignment to the complainant; 2d, that the board of directors had no authority to make said assignment; 3d, that the transfer to the Queen Insurance Company left no assignable interest in the insolvent corporation; 4th, that the assignee (complainant) did not represent the creditors, and had no authority to collect the unpaid notes. The overruling of their several demurrers is assigned as error by the defendants, jointly and severally.

FAITH & CHAMBERLAIN, and RUSSELL & BOONE, for the appellants.—(1.) A corporation, organized under the general statutes, can not make an assignment for the benefit of its creditors. Such a corporation is the creature of the statute, and possesses only such rights and powers as are given to it. When it becomes extinct, the statute makes provision for the disposition of its property, but gives it no power to appoint a person to administer on its estate. On the practical dissolution of a corporation—"whenever it becomes a nominal, inert body, its property and funds gone, and it is reduced to insolvency, rendering legal remedies against it fruitless and unavailing"—the liability of the stockholders becomes absolute, and the right and remedies of creditors to enforce it accrue.—*Cent. Ag. & Mech. Asso. v. Gold Life Ins. Co.,* 70 Ala. 134. In the absence of statutory provisions, when

[Chamberlain v. Bromberg.]

a corporation becomes dissolved, or extinct, debts due to or from it become extinguished.—*Fox v. Horah,* 1 Ired. (N. C.) 358; *Port Gibson v. Moore,* 13 Sm. & Mar. 157; *White v. Campbell,* 5 Humph. 38; *Hopkins v. Whitehead,* 1 Head, Tenn. 31; 6 Jones Eq. (N. C.) 345. But the statutes intervene, declaring a direct liability from the stockholders to the creditors, and making the officers or managers at the time of dissolution the trustees of both creditors and stockholders, with full authority·to settle its affairs, pay its debts, and distribute any assets that may remain.—Code, §§ 2023, 2028-9. These provisions are a part of the charter of every corporation organized under the general law; they provide a trust fund for the equal benefit of all the creditors, allowing none to acquire a preference or priority; and it is to be administered on the rules and principles which governed the administration of the security for which it was substituted.—Mor. Corp., §§ 606, 623; *Wright v. McCormack,* 17 Ohio St. 86; *McCarthy v. Lavasche,* 89 Ill. 270; *Hatch v. Dana,* 101 U. S. 205; *Jacobson v. Allen,* 20 Blatch. 525; *Farnsworth v. Wood,* 91 N. Y. 308; *Bristol v. Sandford,* 12 Blatch. 341; *Lane v. Morris,* 8 Geo. 468; *Patterson v. Lynde,* 106 U. S. 519; 3 Comst. 415; *Curtis v. Leavitt,* 15 N. Y. 44; 8 Cowen, 387; 1 Hopk. 301; *Smith v. Huckabee,* 53 Ala. 191; *Spence v. Shapard,* 57 Ala. 598; *Pollard v. Bailey,* 20 Wall. 520; *Crawford v. Rohrer,* 59 Md. 599; *Richmond v. Irons,* 121 U. S. 65; *Relf v. Rundle,* 13 Otto, 222; *Parsons v. Charter Oak Ins. Co.,* 31 Fed. Rep. 305; 1 Perry on Trusts, § 287, and authorities there cited; *Carrington v. Richardson,* 79 Ala. 107.

2. The complainant is not the representative of the creditors, but only of the corporation.—*Grangers' L. & H. Ins. Co. v. Kamper,* 73 Ala. 346. Occupying only the position of his assignor, he can not be heard to question the assignment to the Queen Insurance Company. That stock notes may be pledged as collateral security by a corporation, see *Wooldridge v. Holmes,* 78 Ala. 568. If the pledge to the Queen Insurance Company be "null and void," as the complainant alleges, he should establish that fact, and recover possession of the notes, before harassing the makers with this suit.—*Fullerton v. Ins. Co.,* 100 N. Y. 76; *Wilson v. Esten,* 14 R. I. 621; *Pilsbury v. Kingon,* 31 N. J. Eq. 619; *Heinrich v. Wood,* 7 Mo. App. 236; *Scoville v. Thayer,* 15 Otto, 143; *Creed v. Lancaster Bank,* 1 Ohio St. 1; 5 Watts & Serg. 145.

[Chamberlain v. Bromberg.]

3. The complainant can not be heard to assail the transfer by Hannan, Festorazzi and others, of their respective shares of stock.—*Billings v. Robinson*, 28 Hun, N. Y. 122; *Bridgford v. Barbour*, 80 Ky. 529; *Pilsbury v. Kingon*, 31 N. J. Eq. 619; 13 Nebr. 298. But these transfers were made in accordance with a recognized custom or usage, and their validity can not be successfully assailed.—*Cecil Bank v. Wats. Bank*, 15 Otto, 217; *Insurance Co. v. Smith*, 11 Penn. St. 120; *Hall v. Insurance Co.*, 5 Gill, 484; *Billings v. Robinson*, 28 Hun, N. Y. 122; *Whitney v. Butler*, 118 U. S. 655; *Merrimac Co. v. Levy*, 54 Penn. St. 227; *Spring Co. v. Harris*, 28 Mo. 382; 52 Mo. 377; Cook on Stock, &c., § 332; Thomp. Stockholders, 280, § 220; *Gilbert v. Manchester Co.*, 11 Wend. 628; *Utica Bank v. Smalley*, 2 Cowen, 777.


F. G. BROMBERG, and HARRY T. SMITH, *contra.*—(1.) The corporation had power to make an assignment for the equal benefit of all its creditors, and this power could be exercised by the directors.—*Thorington v. Gould*, 59 Ala. 461; *Allen v. Railroad Co.*, 11 Ala. 451; *Pope v. Brandon*, 2 Stew. 401; *Gibson v. Goldthwaite*, 7 Ala. 281; *Hutchinson v. Green*, 15 Amer. & Eng. Corp. Cases, 614; *Dana v. Bank*, 5 Watts & Serg. 223; *Terry v. Anderson*, 95 U. S. 623; 52 Ind. 473; 2 Mor. Corp., § 802; 2 Kent's Com. 382; *Marsh v. Burroughs*, 1 Woods, C. C. 469.

2. The corporation had a right, also, to assign its subscriptions for stock, or stockholders' notes, as a part of its assets.—*Wooldridge v. Holmes*, 78 Ala. 568; *Downie v. Hoover*, 12 Wisc. 174; 9 Atl. Rep. 73; Amer. Digest, May, 1887, p. 38. That the complainant can enforce this liability of the stockholders in equity, see *Allen v. Montg. Railroad Co.*, 11 Ala. 437; *Paschall v. Whitsett*, 11 Ala. 487; *Glenn v. Williams*, 1 Amer. & Eng. Corp. Cases, 58; *Bunn's Appeal*, 3 Amer. & Eng. Corp. Cases, 1.

3. The by-law regulating the transfer of stock subscriptions was a reasonable restriction, and was in harmony with statutory provisions, as well as common-law principles. Code, § 2019; *Cunningham v. Life Insurance Co.*, 4 Ala. 654; *Atl. Bank v. M. & T. Bank*, 20 N. Y. 506; *Bosanquet v. Shortridge*, 4 Excheq. 699; 1 Mor. Corp., § 164; Field on Corp., sec. 118, Wood's ed.; Angell & Ames on Corp., §§ 353-4, 567; Green's Brice's *Ultra Vires*, 526. Transfers made or attempted, in violation of this by-law, are void, and may be repudiated by the corporation.—Mor. Corp., sections

525, 679; *Railroad Co. v. Thompson*, 103 Ill. 202; *Railroad Co. v. Tipton*, 5 Ala. 787; 7 Jones, L. 275; 56 Cal. 652; 59 Wisc. 655.

STONE, C. J.—The Queen Insurance Company, a corporation under the laws of Great Britain, was made a party defendant to this suit, and filed its separate demurrer, which was ruled on by the chancellor. By some arrangement, that demurrer has been left out of the transcript, and no error has been assigned on that ruling. What we have to say, therefore, in this opinion, and the decree we may pronounce in this cause, does not, in any manner, affect the rights of the Queen Insurance Company.

We think it too clear to admit of discussion, unless our statutes after noticed have made a change, that the Alabama Insurance Company, being unable to meet its debts, had the power to make an assignment for the benefit of its creditors, if done in good faith; that the board of directors, as its governing body, was the proper authority to execute that power; and that the assignee designated and appointed in and by such assignment, may be clothed with authority to execute the trust, to the same extent as if a natural person were to make such assignment. This, we understand to be the American doctrine, keeping pace with the growth and development of commerce, and is, to some extent, a step in advance of some of the older English authorities. In fact, a growing purpose to enforce honesty and fair dealing in commercial transactions, and to facilitate remedial activity, may justly be claimed as one of the meliorations modern jurisprudence has achieved over that massive system we are accustomed to venerate as the ancient common law.— *Pope v. Brandon*, 2 Stew. 401; *Gibson v. Goldthwaite*, 7 Ala. 281; *Allen v. Montg. R. R. Co.*, 11 Ala. 437; *Thorington v. Gould*, 69 Ala. 461; *Cen. Agr. & Mech. Asso. v. Ala. Gold Life Ins. Co.*, 70 Ala. 120; 2 Mor. Corp., sections 802-3; Cook Stock and Stockholders, sections 199 *et seq.*; *Ger. Pass. Railway Co. v. Fitler*, 60 Penn. St. 124.

It is contended for appellants that, under our statute (Code of 1876, § 2023), the liability of stockholders for unpaid subscriptions is to the creditors, and only to the creditors; and that, therefore, the directors have no power to assign the same. The provision is as follows: "Each stockholder in any private corporation, heretofore or hereafter organized, under any general or special law of this State, shall be

individually liable to the creditors of such corporation for the unpaid stock owned by him; but no such stockholder shall be otherwise individually liable for any dues or debts owing by such corporation, incurred or contracted after the fifth day of December, 1875." The constitution of 1875 became operative December 6, 1875.

Before our constitution of 1875 went into effect, some classes of private corporations, in their organic law, contained special provisions, that the stockholders were respectively liable for the debts thereof, in proportion to the stock holden therein.—Code of 1867, §§ 1659, 1760. These provisions were interpreted as imposing a liability on the stockholders, equal to their holding of the stock, and in addition to the amount thereof, whether their stock subscriptions had been paid in full or not. This liability was cancelled and forbidden by the constitution of 1875, except for unpaid stock owned. Cons. of 1875, Art. XIV, § 8. The statute approved January 20, 1876—Code 1876, § 2023—was enacted for the purpose of harmonizing our statute law with the new constitution, by repealing all statutes imposing liabilities on stockholders, in excess of unpaid subscriptions. This we think was the controlling, if not the sole purpose, of the enactment. The argument in support of this proposition is as follows.

*First:* The statute provides no remedy in favor of the creditors for the enforcement of such liability, and it is manifest that the legislature did not intend to arm them with the right to sue at law. It is a right, if the intention was to confer one not theretofore existing, not given to them as individuals, but as a class, which could only be enforced in equity.—*Patterson v. Lynde,* 106 U. S. 519; *Smith v. Huckabee,* 53 Ala. 191; *Spence v. Shapard,* 57 Ala. 598. We think the purpose of the statute was, that while relieving stockholders of one liability, the legislature intended to emphasize the fact, that they were not relieved of their liability for unpaid stock subscriptions.

*Second:* The statute in question—Code, § 2023—makes no discrimination between stock subscriptions due to insolvent corporations, and those due to solvent corporations. If unpaid subscriptions for stock owned in insolvent corporations can be collected only by creditors, the same rule must apply when the stock indebtedness is to a solvent corporation. This would deny to all private corporations the right to collect unpaid subscriptions to their capital stock, and

[Chamberlain v. Bromberg.]

vest the right and duty in the creditors alone. The argument proves too much, and hence proves nothing.

It is contended that, under section 2028, Code of 1876, the managers of the corporation—in this case, the board of directors—were made trustees of the stockholders and creditors, and were alone authorized to settle the affairs of the corporation, unless other persons were appointed by the General Assembly, or by a court of competent authority; and, inasmuch as no such appointment was made, the contention is, that the directory alone could exercise the authority it attempted to confer on the assignee.

We think this, also, is a misapprehension of the purpose of the statute. Sections 2027 and 2028 relate to the same subject, and must be interpreted together. Their intention was to obviate the inconvenience and injustice which, under the older system, resulted from the dissolution of a corporation, leaving its affairs unsettled. The corporation having only an artificial existence—a franchise granted—when its term expired, or the franchise was forfeited or revoked, it was ruled, under that system, that it possessed no vitality, and could perform no corporate function. All its rights and faculties expired with it. This frequently worked great hardships. To remedy this, these two sections of the Code, mainly, and others incidentally, were adopted. They relate entirely and exclusively to "corporations whose charters expire by their own limitation, or are annulled by forfeiture, or dissolved for any (some) other cause." Corporations embraced in either of these classes continue to "exist as bodies corporate, for the term of five years after such dissolution," for certain specified purposes, "but not for the purpose of continuing the business for which they may have been, or may be established."—Code of 1876, § 2027. This section has no relation to the Alabama Insurance Company, or at least had not at the time that company made the assignment. Its charter had not expired, it had not been annulled by forfeiture, and had not been dissolved for any other cause. It was still a corporation, possessing vital force, although embarrassed and unable to meet its debts.

And section 2028 of the Code of 1876 relates only to corporations in one of the three predicaments for which section 2027 makes provision. It is but a continuation of that section. "Upon the dissolution of any such corporation," is its language. It then provides in what manner the affairs of such dissolved corporation shall be administered and settled

[Chamberlain v. Bromberg.]

up, in the absence of intervention by the General Assembly, or by a court of competent authority. The statute, including the two sections, is both remedial and enabling, and continues for limited purposes, and for a limited time, some of the corporate powers, to a corporation which had otherwise lost all vitality. These sections have nothing to do with the present controversy.

We have referred above to certain provisions of our former statutes (Code of 1867, §§ 1659, 1760), under which stockholders were made liable to creditors of corporations, beyond their subscriptions, to an additional amount, equal to the stock held by them, if necessary to the payment of the corporation's liabilities. Other States have had similar legislative provisions. These liabilities being purely the creatures of statute, and the liability being expressed to be to the creditors, and to no one else, it has always been rightfully held that the directors, or governing body of the corporation, had no power over them, and could neither enforce nor administer them. They were not due to the corporation—were in no sense its property, but belonged alone to the creditors. *Pollard v. Bailey*, 20 Wall. 520; *Spence v. Shapard*, 57 Ala. 598; *Smith v. Huckabee*, 53 Ala. 191; *Story v. Furman*, 25 N. Y. 214.

Subscriptions to stock rest on a different principle. The liability for their payment is contractual, and is a debt due to the corporation. Over the administration of this fund, the board of management, within the purview of the corporate powers, has complete control. It is corporate property, and, like any other corporate assets, it may, in a proper case, be the subject of an assignment.—*Wooldridge v. Holmes*, 78 Ala. 568; *Grangers' Life Ins. Co. v. Kamper*, 73 Ala. 325.

We have cited very few of the many authorities which sustain the views expressed above. They will be found in the excellent briefs of counsel.

The decree of the chancellor is affirmed.

NOTE BY REPORTER.—On a subsequent day of the term, in response to an application by the appellants' counsel, the following opinion was delivered:

STONE, C. J.—Since delivering the opinion in this cause —January 5, inst.—we have been asked to consider and dispose of other questions, which it is claimed are raised by the pleadings. In our former opinion we considered only two

questions.   They alone had been urged in the argument, and
we confined our rulings to them.   We did this, because the
other questions referred to in the assignments of demurrer,
were not, in our opinion, so raised, as that we ought to con-
sider them at this stage of the proceeding.   All the ques-
tions presented in this case, it will be remembered, arise on
the demurrers to the bill.   On such presentation, we must
treat as true every averment that is well pleaded.   Some of
the grounds of demurrer are what are called speaking de-
murrers, having neither averment nor omission of averment
to uphold them.

The questions we are requested now to consider are two
in number:   "*First*, that the Alabama Insurance Company
had no assignable interest in the notes of Lyons and Cham-
berlain, because the said notes had been already indorsed
and delivered to the Queen Insurance Company."

In answer to this, we state, as we stated in the opinion in
chief, that the rulings of the chancellor on the demurrers of
the Queen Insurance Company are not presented before us
for review, and hence we do not consider them.   We may state
further, however, that according to the averments of the bill,
the Alabama Insurance Company was indebted to the Queen
Insurance Company in a sum not exceeding ten thousand
dollars; that the stock notes were indorsed by the former,
and placed in the custody of the latter, only as collateral se-
curity for such indebtedness; and that the stock notes so
placed amount to a stated sum, which is six or eight times
the amount of the said indebtedness to the Queen Insurance
Company.   This shows a large *residuum* of interest in the
Alabama Insurance Company, which we are not able to per-
ceive, at this stage of the proceeding, it had not ample power to
assign.   And the Chancery Court, acquiring jurisdiction of
the trust and of its administration, will see to it that the
debtors be not charged beyond what they owe, and that two
debtors shall not be required each to pay what is only a sin-
gle debt.

But there is another inquiry raised by the bill, in relation
to the debts assigned to the Queen Insurance Company.   It
is charged that these collaterals, so placed with the latter
company, constituted substantially all the available assets of
the Alabama Insurance Company, and the transfer was made
by the president and secretary of the Alabama company,
without the authority or approval of the board of directors.
On this averred state of facts, if true, a question may arise

whether the transfer is valid, and if valid, whether or not it will operate as a general assignment. On these questions we express no opinion, until the rights of the parties are more fully developed.

The second point on which we are asked to express our views is stated as follows: "Because the averments of the bill show that Hannan, Festorazzi, Crawford and Williams, were not stockholders in the company, at the date of the assignment to the appellee."

The bill declares that each of these demurrants, and many other stockholders, had attempted to assign their stock, before the assignment was made to Bromberg; but it avers that such attempted assignments were invalid. Its averments bearing on this question are in the following language: "Your orator shows unto your Honor that one of the by-laws of said Alabama Insurance Company was in words as follows: 'This company shall not loan any money upon its own stock as collateral, and no stockholder shall sell or transfer his stock, so long as any balance may remain due on the same to the company, without first obtaining the consent of the board of directors, and furnishing a substitute fully satisfactory.'" [Here follows a description of the transfers.] "None of said transfers were satisfactory to the board of directors of said company at the time of the several transfers to them respectively, nor did said board consent to such transfers, nor were the board of directors informed, at the time the respective applications of said several parties were made, that said parties desired to transfer their stock, nor were they informed subsequently thereto that said transfers had been made. On the contrary, in utter disregard of said by-law, the said selling stockholders and the officers of said company transferred said stock as they saw proper to do, and neither asked the consent of the board of directors, nor informed them of the fact. And your orator shows unto your Honor that the board of directors, as a board, knew nothing of said several transfers, nor did they do anything to ratify the same, nor did several of the board of directory have any personal information of such transfers."

It will be observed that, if the foregoing averments are true, none of said transfers, relied on in argument of this cause, were made in conformity with the by-law; and there is not only nothing shown from which ratification can be inferred, but all ratification is expressly denied. If there has been

implied ratification, it does not appear in the averments of the bill.

One original stockholder, Goelet, it is averred, transferred his stock with the knowledge and approbation of the board of directors. He is not made a party to this suit.

The bill also makes the point, that the transfer of the stock notes to the Queen Insurance Company was invalid, because it was done without the consent of the board of directors. Neither of the questions discussed in this supplemental opinion is it our intention to decide at this stage of the proceedings, further than is intimated above.

Should it appear, in the further progress of this case, that any of the transfers were made from solvent to irresponsible holders, and that the board of directors either authorized or ratified such transfer; and should the attempt be made to establish fraud or favoritism in such transaction, the inquiry will arise, whether the assignee, complainant in this suit, can raise the question. He is simply the appointee of the board of directors, and, it would seem, is clothed with only such powers as the board of directors could assert. Possibly, the creditors alone could make such complaint. This question, however, is not raised, and we do not propose to decide it.

In the present stage of this case, it would be at most conjecture, if we were to define and rule on the issues we may suppose will be formed. To do this with any probable profit, would require us to anticipate what will or may follow, and to express our views on each varying shape we may suppose the controversy can assume. And this with a well grounded fear, that each and every hypothesis we might consider would fail of presenting the true case, to be hereafter developed. We therefore decline to announce any ruling, farther than we have already done.