# Caulfield *et al.* v. Finnegan.

*Action a Promissory Note against Indorser.*

1. *Action against indorser of non-negotiable note; what necessary under the statute to fasten liability.*—Under the provisions of the statute (Code of 1886, §§ 1778–80), in order to charge the indorser or assignor of a non-negotiable note for an amount exceeding one hundred dollars, suit must be brought against the maker to the first term of the court to which it may properly be brought, after indorsement, unless the time for bringing suit has been extended or waived by the consent of the assignor or indorser in writing signed by him, or unless suit is excused because of some one of the categories enumerated in one of the subdivisions of section 1780 of the Code of 1886.

2. *Same; sufficiency of complaint.*—In an action against the in-

[Caulfield *et al.* v. Finnegan.]

dorser of a non-negotiable note, the complaint must aver a compliance with the statutory requirements necessary to fix his liability, or the particular causes relied on as relieving the plaintiff from the duty of performance, as provided by the statute, (Code of 1886, § 1780).

3. *Same; excuse for not suing; act or promise inducing delay of suit must be before the expiration of the period for the institution of the suit.* When, in an action against an indorser of a non-negotiable note, the plaintiff relies upon the excuse as stated in the seventh subdivision of section 1780 of the Code of 1886, as the particular cause for not bringing the suit as required by section 1778, the act or promise.inducing the delay of the suit against the maker of the note must have been done or made before the expiration of the period for bringing the suit; and averments of facts or transactions occurring after the expiration of the period for the institution of the suit can not be looked to as inducing the delay.

4. *Same; same; the promise to induce the delay must be expressed.* The act or promise of the indorser inducing the delay of suit against the maker of a non-negotiable note, to constitute an excuce for not bringing suit against the maker in such sort as to give the indorseé of the non-negotiable note a right of action against such indorser, must not be a mere implied promise deduced from a verbal waiver of suit, but must be an expressed promise to pay.

5. *Same; same; case at bar.*—In an action by an indorsee of a promissory note against an indorser, where, as an excuse for not bringing suit against the maker as required by statute, the plaintiff avers in his complaint that he told the defendant (the indorser), that nothing could be made out of the maker of the note, and the indorser said that he did not expect the plaintiff to make anything out of the maker, and wanted him to wait until the maker died, and see if the maker's wife would not pay the note out of the insurance money she would receive when the maker died, and that the plaintiff agreed to do this, there is not averred such a "promise" to induce a delay in the bringing of the suit against the maker as will constitute an excuse under the statute for the plaintiff's failure to bring suit against the maker.

APPEAL from the City Court of Bridgeport.

Tried before the Hon. S. W. TATE.

This was a suit by the assignees of a promissory note against the assignor. The suit was instituted on November 22, 1894, by the appellants, Hop Caulfield and his wife, Mary Caulfield, against the appellee, Orrin Finnegan.

The complaint as originally filed was demurred to, and was amended three different times; demurrers having been interposed and sustained to each amendment. The complaint as first amended reads as follows: "The

plaintiffs, Hop Caulfield and wife, Mary Caulfield, claim of the defendant, Orrin Finnegan, the sum of three hundred and twenty dollars, with interest from May 30, 1890, and ten per cent. attorney's fee for collection, on a waiver note or contract executed on May 30, 1890, by C. M. Porter, payable to Orrin Finnegan, the defendant in this cause, one day after date and assigned or transferred to the plaintiffs on or about November, 1892, which transfer reads as follows : 'I hereby transfer the within note to Hop Caulfield and wife for a valuable consideration. O. Finnegan.' The following being a copy of the note sued on : 'May 30, 1890. One day after date I promise to pay to the order of Orrin Finnegan three hundred and twenty dollars, for value received, payable at Stevenson, with interest from date at the rate of eight *per cent. per annum*, with all cost of collection including ten *per cent.* attorney's fees ; and each of us, whether maker, security or indorser on this note, hereby waives and renounces for himself and family any and all homestead, any exemption rights to which he or they may, in any event be entitled under any provision of the · constitution or laws, State or Federal, as against this note or· any renewal thereof. C. M. Porter. Witness : A. P. Joyner.' " The rest of the· complaint as amended set out the facts to show why the bringing of the suit upon the note was delayed. The demurrers to this amended complaint were sustained, and were likewise sustained to the complaint as amended the second time. The third amended complaint, as set out in the abstract was as follows :

"The third amended complaint, after claiming on the note and describing the same as in former complaints, alleges that plaintiffs were excused from suing the maker to the·next or any subsequent term of the court having jurisdiction, after the transfer thereof, 'Because, after the note was transferred and delivered and before the time for bringing suit, plaintiff, Mary Caulfield, told defendant that she did not believe anything could be made out of C. M. Porter, and defendant said he did not expect them to try to make anything out of C. M. Porter, that he did not want them to look to C. M. Porter for the payment of the note at any time ; and requested them never to try to make it out of the note under any circumstances, but· that he wanted them

[Caulfield *et al.* v. Finnegan.]

to agree to do him the favor of waiting for the money until C. M. Porter died, and let Hop Caulfield try and see if Mrs. C. M. Porter would not pay it out of the insurance money that he understood she was to receive when Mr. C. M. Porter died; and plaintiff agreed to do that, and they here allege that they waited till C. M. Porter died, which was about May, 1893, and after she received the money that plaintiff, Hop Caulfield, did present the note to her for payment, and she did not pay it. Plaintiffs then notified the defendant that she would not or did not pay it and they now wanted the money; and defendant asked them to wait on him till he could see Mrs. Porter and see if she would not secure him; and that at the request of both plaintiffs and defendant, D. I. G. Wilson went with the defendant and tried to persuade her to secure the defendant for the amount, and further, that as she would not do so, defendant again asked the plaintiffs to wait on him till he could see Sam Porter, a son of C. M. Porter, and see if he would not secure him for the amount, and admitted that he was responsible for the amount but did not think the kind folks out to let him lose it. Therefore, by these special agreements and promises and admissions and the acts of the defendant, the plaintiffs were induced to delay, and excused from ever bringing suit against the maker of the note or his legal representatives. That this note with the interest and ten *per cent.* attorney's fees is still unpaid. Plaintiffs aver that at the time and place when the conversation took place, in which defendant requested plaintiffs not to look to the maker of the note for the money, that it was understood and agreed between defendant and plaintiff that the maker of the note was insolvent and that nothing could be made out of him, and that for this reason plaintiffs were excused from bringing suit at any term of a court against the maker of the note.'"

To this third amended complaint, the defendant demurred upon the following grounds: "1st. The complaint shows on its face that the plaintiffs excuse themselves for failure to sue the maker of the note at any term of court, by setting up conversations between the plaintiff Mary Caulfield and others and the defendant, in violation of the law. 2d. The excuse set up for a failure to bring suit against the maker of a note, or his

[Caulfield *et al.* v. Finnegan.]

personal representative, constitutes a waiver, such waiver rests in parol, and the law provides that a waiver of suit must be in writing. 3d. The plaintiffs in said third amended complaint seek to excuse delay and also the utter failure to sue at any time, without averring a waiver in writing, and without averring any act of the defendant and without averring any promise made by the defendant. 4th. The complaint as amended avers no facts showing that there was an express agreement or promise by the defendants in any form, to pay the note without suit having been brought against the maker thereof. 5th. The said third amended complaint shows on its face that it is an effort to avoid the fatal consequences for a failure to comply with those requirements of the law necessary to fix the liability of the defendant.''

The demurrer to the third amended complaint was sustained, and the plaintiff declining to plead further, judgment was rendered for the defendant. The plaintiff appeals, and assigns as error the rulings of the court in sustaining the demurrers to the original complaint, and as each time amended.

MARTIN & BOULDIN and JOHN H. VAUGHT, for appellants.—1. The statutory excuses being exclusive, (*Mobile Sav. Bank v. McDonnell*, 83 Ala. 595), the seventh sub-division of section 1780 was doubtless intended to let in other excuses than those already admitted by the statute, and which were of the character of excuses held by the courts to be good at common law, prior to the statute defining them.—1 Brick. Dig. 281, § 410; *Riddle v. Rourke*, 1 Ala. 394.

2. The general rule is that presentment of commercial paper for payment and protest and notice of dishonor are necessary to charge an indorser of such paper; but the defense may be waived, expressly or impliedly, before or after maturity.—Randolph on Com. Paper, §§ 1356, *et seq.* Where the indorser of commercial paper has been discharged by the failure of legal notice of protest, he may bind himself to pay by subsequent unconditional promise, or by conditional promise accepted upon the conditions stipulated.—*Isbell v. Lewis*, 98 Ala. 551; *Bolling & Son v. McKenzie*, 89 Ala. 470; *Thornton v. Wynn*, 12 Wheat. 183; *Leffingwell . v. White*, 1 Johns. Cas. 99.

[Caulfield *et al.* v. Finnegan.]

3. That the parties had the power to change, by subsequent parol agreement, the contract of indorsement, seems to be well settled.—1 Brick. Dig. 394, § 233 ; 3 Brick. Dig. 152, § 146 ; *Young v. Fuller*, 29 Ala. 464.

TALLY & PROCTOR, *contra.*—1. The liability of an indorser is conditional, and the complaint, setting forth no valid excuse for the plaintiffs' failure to comply with the statute, is insufficient to support an action against the defendant. The statutes under consideration (Code of 1886, §§ 1778-1780) relate to the same subject matter and must be construed together. If the "promise" in sub-division 7 of the latter occupies the same field as the consent to an extension or waiver in the former, they may be reconciled by construing the latter to mean a promise in writing. The evils which the legislature sought to remedy were such as grew out of a state of uncertainty as to what must be done to fix the liability of indorsers. The legislature required a suit to the first court. Next, it provided that such suit might be waived or the time extended. But that there might be no uncertainty, the consent to such waiver or extension should be in writing. To hold that a promise under sub-division 7 may rest in parol is to again open the door to uncertainty. It may well be doubted if such was ever intended. To require by construction such promises to be in writing is consistent with the clearly expressed legislative policy, and tends to advance the purpose in view. It may be it was not declared that such promise should be in writing, because it was so clearly understood as to appear to be unnecessary. Sub-division 7 must occupy a field not covered by section 1779. We must concede that it was intended to cover cases not contemplated by 1779, and restrict each within its proper sphere.—*Baker v. Keith*, 77 Ala. 544.

2. The plaintiffs can not bring themselves within the sphere of sub-division 7 by averring that they were "induced to delay." In a case under section 1779 the delay is induced, the failure to sue is induced, is caused, is procured by the consent in writing or the written waiver. When there is consent to an extension or a waiver under section 1779, the plaintiff may sue to first court notwithstanding the extension or waiver. Such consent to extension or waiver is no bar to suit. But the plaintiff

[Caulfield *et al.* v. Finnegan.]

does not sue because he is induced, led into the delay by the consent to the extension or the waiver. No "special understanding" to "wait" and "see," whereby they were induced, can take the case from under the statute, and permit it to rest in parol under sub-division 7. A promise looking to delay beyond the time to sue or to a waiver or suit must be in writing. Consent to an extension is a promise, a promise not to take advantage of a failure to sue. Consent to waive is a promise in legal effect. And that a promise was made does not take the case from under the influence of section 1779.

BRICKELL, C. J—The assignments of error relate to all the rulings of the court below, on the demurrers to the original and amended complaints, but the argument of counsel for the appellants is devoted exclusively to the rulings on the demurrer to the third, or last amended complaint, and it is to these only we will direct consideration.

The abstract states that this count describes the note, as in former counts. Adopting a liberal interpretation of the statement, we have referred to the former counts, as set out in the abstract, for a description of the note, and of the indorsement or assignment thereon, the foundation of the suit. These are, perhaps, stated with more of fullness, in the first amended complaint, than in any of the other counts. That count or complaint, purports to set out *in haec verba* the note, and the indorsement or assignment thereof by the defendant. The note bears date May 20, 1890, is an ordinary non-negotiable promissory note, signed by C. M. Porter as maker, for the payment of three hundred and twenty dollars to the defendant, one day after the date thereof, containing a waiver of exemptions, and a stipulation to pay attorney's fees for collecting. The endorsement or assignment thereof, made by the defendant, was made, it is averred, in November, 1892, and is in these words: "I hereby transfer the within note to Hop Caulfield and wife, for a valuable consideration."

The general indorsement or assignment of paper not negotiable according to the law merchant, like the indorsement of paper negotiable, imports a contract or engagement, in its nature and essence conditional; and the conditions upon which it may be converted into an

absolute undertaking or engagement, are prescribed by the statute.—Code of 1886, §§ 1778–80. When, as in the present case, the amount due on the paper assigned, exceeds one hundred dollars, the condition is, suit against the maker to the first term of the court of the county of his residence, to which suit may be properly brought, unless the time for bringing suit has been extended or waived by the consent of the indorser or assignor in writing, signed by him ; or unless suit is excused because of the existence of some one of the categories enumerated in the several sub-divisions of section 1780 of the Code. In an action founded on the indorsement or assignment, the complaint must aver performance of the condition, or the particular causes relied on as relieving from the duty of performance, freeing the indorsement or assignment from its conditional quality, converting it into an absolute engagement.—*Ryland v. Bates*, 4 Ala. 342 ; *Lindsay v. Williams*, 17 Ala. 229 ; *Suggs v. Winston*, 49 Ala. 586 ; *Mobile Savings Bank v. McDonnell*, 83 Ala. 585. Without such averments, the complaint would not only be subject to demurrer, but it would not contain a substantial cause of action, which, on error, would support a judgment against the assignor or indorser.—*Cook v. Mut. Ins. Co.*, 53 Ala. 37. The statute creates the condition on which the liability of the indorser or assignor depends, and the facts or categories upon which performance of the condition may be excused ; there can be no exceptions engrafted on the statute ; no departure from, or modification of, its terms.

Without an averment of suit against the maker, by the averment of facts and transactions occurring between the parties, the purpose is to excuse the failure to sue, bringing the case without the operation of the seventh sub-division of section 1780 of the Code. The words of the sub-division are : "When, by any act or promise of the indorser, the plaintiff is induced to delay bringing such suit." Facts and transactions occurring before the expiration of the time for bringing suit, are commingled in the complaint, with facts and transactions of subsequent occurrence ; they are, however, readily distinguishable. The death of the maker, as the complaint avers, happened about May, 1893. Courts take notice of the time of the holding of other courts prescribed by the statute, and we, therefore, know that the first term

of the circuit court of the county of Jackson, (the county of the residence of the maker), after the assignment of the note, commenced on the 5th Monday after the 4th Monday in January, 1893, anterior to the death of the maker.—*Lindsay v. Williams*, 17 Ala. 229. It is apparent from the mere reading of the sub-division, first introduced into the statute by the present Code, that the act or promise inducing the delay of suit, must have been done or made before the expiration of the period for bringing suit. It is only such acts or promises, operating on the mind of the holder of the paper, which could have induced the delay of suit; and it is delay of the suit the statute requires, suit to the first court in the county of the residence of the maker, to which the sub-division refers. The averments of the facts and transactions occurring before the period of suit elapsed must be separated from the facts and transactions of subsequent occurrence; for it is these alone which could have induced the delay of suit.

As recited in the complaint these facts and transactions are, that one of the plaintiffs said to the defendant, that, "she did not believe anything could be made out of C. M. Porter, and defendant said he did not expect them to try to make anything out of C. M. Porter; that he did not want them to look to C. M. Porter for the payment of the note at any time; and requested them never to try to make it out of the maker of the note under any circumstances, but that he wanted them to agree to do him the favor of waiting for the money until C. M. Porter died, and let Hop Caulfield try and see if Mrs. C. M. Porter would not pay it out of the insurance money that he understood she was to receive when C. M. Porter died; and plaintiff agreed to do that." If the paper was a negotiable promissory note, and the inquiry was, whether the indorser had waived presentment to and demand of payment from the maker, and notice of the default, the solicitation of the indorser that the note should not be presented to the maker for payment, would have constituted a waiver, rendering the indorser liable, as if these prerequisites to his liability had been observed by the holder. This is upon the obvious principle, that as the presentment, demand and notice are intended for the benefit of the indorser, he may waive them, as parties to contracts may waive or renounce the benefit of

[Caulfield *et al.* v. Finnegan.]

any stipulation designed for their peculiar protection. Story on Bills, § 371 ; Edwards on Bills & Notes, 595 ; 2 Dan. Neg. Ins., § 1090 ; *Sheldon v. Horton*, 43 N. Y. 93 ; s. c. 3 Am. Rep. 669. A waiver, in a general sense, is the voluntary and intentional abandonment, renunciation, or relinquishment of a known legal right. In *Walker v. Wigginton*, 50 Ala. 583, a waiver, as the word is employed in section 1779 of the Code, was thus defined by PETERS, C. J.: "To waive, is to give up, to abandon and relinquish. It leaves the thing abandoned as though it had never been." That which will constitute a waiver of demand and notice by the indorser of commercial paper, will constitute a waiver of suit by the assignor of paper not commercial. The parties stand in relations bearing resemblance ; the contract of each is conditional, and the words and conduct of each, it is reasonable and just to subject to like interpretation.

A waiver of suit by the indorser or assignor of paper not commercial, unlike the waiver of demand and notice by the indorser of commercial paper, must be in writing ; the statute is clear, unqualified, and may properly be said to be a prohibition of all merely verbal waivers. "The time for bringing the suit, as required by the preceding sections, may be extended, or waived by the consent of the indorser or assignor in writing, signed by him."—Code of 1886, § 1779. Originally, the statutory requirement was limited to cases in which the amount due did not exceed fifty dollars, of which justices of the peace had jurisdiction. Its words were, "unless the indorser consent in writing, that further time may be given to the maker or obligor."—Clay's Dig. 583, §§ 12-15. The construction of the statute, conforming to its words, was, that it was without application, when the amount due exceeded fifty dollars, and for the recovery, courts of record only had jurisdiction ; and the statute being out of the way, as was said, "there was no rule of law, or policy, to prevent a verbal consent from binding the indorser."—*Litchfield v. Allen*, 7 Ala. 779. The present statute comprehends all indorsements or assignments, without regard to the amount due ; and the change of phraseology from that of the former statute is marked, signifying the intent to render unavailing, all verbal waivers of suit, or extensions of the

·time of bringing suit, not leaving either to the uncertainties of parol evidence.

The sections of the Code, 1778–1782, had their origin in an act passed by the General Assembly in 1828, and the judicial construction it had received. As declared in its preamble, the evil the act of 1828 was intended to cure, was the public injury resulting from the uncertainty of the decisions of the courts, as to the proper time of making demand of payment of the payers of paper, negotiable and not negotiable, in the sense of the law merchant. As to paper of the latter character, it dispensed with presentment for payment to the maker, and notice to the indorser or assignor of non-payment, substituting for them suit against the maker, in accordance with its provisions.—Clay's Dig. 382 ; 1 Brick. Dig. 278, § 378 ; *Mobile Savings Bank v. McDonnell*, 83 Ala. 595. In their present form, embodying the act of 1828, and the judicial construction it had received, they were introduced into the Code of 1852, (Code of 1852, §§ 1543–48) ; and have been preserved and re-enacted in that form, ·in all the subsequent revisions or codifications of the statutes. They are to be regarded as a single statute, and it is merely elementary to say, that they must be so construed as to render them harmonious in operation, if possible, not placing one part in antagonism to another.—*Brooks v. Mobile School Commissioners*, 31 Ala. 227. The seventh subdivision of section 1780, was not introduced, as a separate, distinct legislative enactment. It was enacted solely as a new, additional excuse, relieving from the necessity of suit against the maker. A construction which would give it any other field of operation, would place it in antagonism to other parts of the statute, and cannot be just or reasonable. If the legislative intent had been that, in any event, it should operate a modification or qualification of the important requirement of section 1779, that a waiver, or extension of time for bringing suit, must be in writing, signed by the indorser or assignor, it is the fair and just presumption, that the intent would have been directly and clearly expressed. The act or promise inducing the delay of suit, if it is not in writing, must not have only the elements of a waiver, or the extension of the time of bringing suit, displacing the requirements of section 1779 ; that would place parts of the statute in antagonism.

Without now assuming to decide what acts, or promises, inducing the delay of suit, the sub-division may comprehend, it is enough to say, that an express promise to pay the debt with or without writing, or representation of the solvency of the maker, inducing the delay of suit, made before the period of suit had expired, we incline to the opinion, would constitute a promise, or an act, within its meaning. The promise to pay must, however, be express; it must not be a mere implied promise deduced from a verbal waiver of suit, for that would render nugatory the mandate of the statute that the waiver to be availing must be in writing, and if it was in writing, there would be no occasion for resorting to the sub-division. Giving to the sub-division, this operation, avoids collision with other parts of the statute, and leaves it, as enacted, a new, additional excuse for the failure to sue. The conclusions we have expressed render unnecessary a consideration of the averments of the complaint as to facts and transactions occurring after the lapse of the period of bringing suit, and which could not have induced the failure to sue.

The result is, we find no error in the sustaining of the demurrers to the complaint, and the judgment of the court below, must be affirmed.

Affirmed.